161002 United States v. Valentin Valdes-Ayala Good morning, may it please the court. Linda Backfield for Appellant Valentin Valdes. The prosecution filed an indictment with I believe it was 13 counts of a fraud designed to deprive or with the purpose and intent of depriving the Commonwealth of Puerto Rico and children of funds, money, which was due them. It failed to prove that scheme. It proved and argued to the jury a scheme to deprive the child support debtors of their funds by false advertising and promising services not delivered. Paragraphs 27 and 28 are the key to this indictment. They describe the scheme and they state that its purpose and intent was to defraud the Commonwealth of Puerto Rico and child support beneficiaries. The district court, when it read the instructions, did not even include that language. It rather described the overall way in which the scheme functioned. That allowed the jury to convict without proof of the scheme alleged, which was a scheme to deprive children and Puerto Rico of funds. I want to note that depriving Puerto Rico, ASUME, the child collection support agency, of funds was not proven and essentially impossible because it didn't have any property interest in any funds. The funds that were alleged to have been the purpose of the scheme were those of the children. The method that was presented in which the proof was presented simply showed potential ways in which ASUME could have been thwarted in collection efforts. But no effort was made to prove that in any one of the counts of the indictment alleged there was any attempt to use any of those efforts, much less that they were thwarted. There was no proof of an intent or a scheme to deprive children of any funds. I submit that this case is not so much distinguishable on its facts from Millwood. The facts are somewhat irrelevant. The point is that the same deficiency occurred in Millwood where that's the United States versus Millwood Ninth Circuit case. The same deficiency of proof occurred in which an indictment alleged an intent, a scheme to deprive a certain class of people of their property. It turned out at trial that what was proven was a scheme to deprive a different class of people of their property. And for that reason, the conviction had to be reversed for insufficient evidence. In this case, the issue is viewed not as one of sufficiency, which I submit it is, but rather as one of constructive amendment. It is a constructive amendment of the indictment and not a variance because the indictment was enlarged to include non-alleged victims. And the indictment itself now provides no double jeopardy protection against an allegation that Mr. Valdez, in fact, invented a scheme to deprive his clients of the money they paid for his services. He would be subject to that indictment. The instruction never told the jury that it needed to find that there was an intent to defraud children of funds they were due. Again, I submit that or nor was it told that it needed to find that as an alternative the intent was to deprive a sume of funds. The funds did not belong to a sume. Of course, nor did they belong to the bankruptcy court. The theory that the bankruptcy court was a victim here is absolutely not supportable by any stretch of the imagination. With respect to the aggravated identity theft charge, the difference here between Osuna and this case is that in Osuna, Mr. Bond bought somebody's passport in order to pass himself off as Mr. Bond. Here, the record clearly shows that in every instance, not only did the child support debtors authorize use of their identification, but Mr. Valdez made it clear that it was he, not they, who was submitting the information. Again, one of the debtors testified essentially that Mr. Evercolom testified that Mr. Valdez helped him to cheat on a test. That is not identity theft. It's a different kind of offense. And signing Mr. Serrano's name without his knowledge may be forgery, but Mr. Serrano and Mr. Colon knew that they had authorized and deliberately authorized Mr. Valdez to act as a petition preparer, although he was not authorized to do so. They authorized him to use their identity. There was, therefore, no identity theft, and I think that this Court's decision in Baroa makes it clear that there was no identity theft here. Let me address the issue of sentencing. The United States has conceded that remand is appropriate, but I would urge this Court in any remand order to specify that no restitution can be ordered to the bankruptcy court as a matter of law. And that is because the bankruptcy court was not the objective of any scheme to deprive it of money or property. It was thwarted, it was held in contempt, et cetera, but it was not the object of a scheme to deprive it of money or property. It has a judgment. It can collect that judgment however it sees fit, if it's collectible, but it is not a matter of restitution as a result of the fraud alleged in this indictment. Are there any questions? Judge Thompson? No questions. Thank you. Good morning. May it please the Court, Mariana Bausa for the United States. Contrary to Valdez's assertions, in this case, the indictment charged, the government proved, and the government argued that Valdez committed bankruptcy fraud by filing bankruptcy petitions that had the effect or for the purpose of stopping as soon as collection efforts of child support pensions. That was established by the sheer fact that the bankruptcy petitions created an automatic state of collection. That's why he was able to obtain the relief that he promised his clients. You said had the effect of or for the purpose of? I did say that, Your Honor, but as charged in the indictment, the purpose was and the victims were the stopping collection efforts so that the child support beneficiaries could not receive the child support. That was in the indictment and that's what the government proved. The testimony from Olivera's Chapter 13 trustee and the testimony from every child support debtor that was set, they testified, I got out of jail without having to make any payment because of the automatic state that bankruptcy court provides any debtor in any case. And what the indictment, in this case, specified was that these were not legitimate Chapter 13 petitions that were filed for the purpose of reorganization or so that a debtor could repay his debt. These were filed only for the purpose of getting that state which stopped the collection efforts. It's a very simple fraud that the government proved at trial. That is what the government argued in closing argument. Council does make selective citations of the closing argument, but the government consistently argued the same theory at closing argument. And Council's argument regarding the jury instructions. Wait before you get to that. So if these are non-dischargeable debts, what do you make of what I take to be the argument that delay is different than ultimately depriving of property? Well, there's two responses to that, Your Honor. First, as the jury instructions recognize, the government doesn't have to prove that there was this ultimate loss. Just what the defendant intended to do. And in this case, by this, did intend to stop the collection of child support pensions because that was the only reason he filed these bankruptcy petitions. So the second argument to that was that, yes, a legitimate bankruptcy petition. What's the proof that his intent was to permanently stop the collections? Not permanently stop, but delay the collection. That was my question. I thought your sister was arguing that there was no permanent deprivation. She may be arguing that, Your Honor, but that doesn't mean that this fraud was aimed at delaying collection efforts. And the statute specifically provides for obstructs, delays, or impedes. And the government argued and charged the delaying or obstructing assumed collection efforts by using that automatic state. The fact that this was a temporary relief, because at the end of the day, if the debtor didn't stay current with their payments or didn't continue repayment under the Chapter 13 bankruptcy, that petition would be dismissed. This doesn't mean or doesn't negate the defendant's intent. In this case, the government proved that he was filing petitions for the purpose of obstructing and delaying assumed collection efforts. Because assumed collection efforts in these cases were already in play. There were civil contempt proceedings. His clients were either in jail or they were facing incarceration because of those civil contempt proceedings. And he filed these bankruptcy petitions to get the state so that they could get out of jail without the collection. So he did delay that. And not only that, the government established that by filing Chapter 13 petitions as opposed to Chapter 7 petitions. Not only did he stop collection efforts for the debt that was already due, he stopped collection efforts for debt that was currently accruing because the current estate was protected from collection efforts that assumed it had, such as garnishing of wages. Does that answer your Honor's question? It's an answer. I'll take that. The jury instructions in this case could not have allowed the jury to convict the defendant in any theory other than the one charged by the government. Because the court read the background allegations and when instructing the jury on the bankruptcy fraud, the court said, on a scheme significantly as charged in the indictment. And then the court proceeded to read Paragraph 28. That is not cited in Appellant's brief, but the court at page 874, in fact, read Paragraph 28. And the reason why the court didn't read Paragraphs 27 to 28, it was by stipulation of the parties. Because the verdict form that the jury had before it asked the jury, after each and every single count, whether they found that the license scheme and artifice to defraud the Commonwealth of Puerto Rico and child support beneficiaries filed or cost to be filed a bankruptcy petition. So the jury didn't have to remember this from reading the indictment. The jury had this before them for making a decision and determination as to every single count in the indictment. I would also like to note that the indictment definitely put the defendant on notice as to what the charges were and what the government intended to prove in its case. It included the allegations that he defrauded his clients, but that was because the government at all times sought to distinguish what is a fraudulent petitions that Valdez was filing. Legitimate petitions are not intended to stop collection efforts. They're intended to allow debtors to reorganize their debt and make payments. Valdez's petitions, on the other hand, were only aimed at stopping collection efforts. That's why he only targeted debtors that owed child support. That's why he only listed Azumay as a creditor or the child support beneficiaries as a creditor. And that's why when these petitions got dismissed, he continued to file more petitions because the effect or his intentions were not to help debtors file legitimate petitions, but to stop Azumay's collection efforts. On the aggravated entity theft counter-honors, I want to address a couple of things. One, the government contests Valdez's assertion that the debtors voluntarily gave their information to Valdez. Luis Serrano Aponte did not even know he was filing a bankruptcy petition. He certainly didn't authorize Valdez to file a petition on his behalf. In fact, he testified that he learned he'd filed a bankruptcy petition when he got a notice from the court in the mail. So he certainly could not have consented to Valdez using his information. He thought an attorney was going to file his petition, and that's why he provided that information. And both debtors testified, both Serrano Aponte and Colon Figueroa testified that they didn't consent to the defendant taking the credit counseling on their behalf, even if they had voluntarily given some of the information. The Credit Advisory Foundation could not have issued certificates of compliance with credit counseling if it had known that the debtors hadn't taken the course. In fact, the debtors had no authority to consent to Valdez using their information to get that certificate on their behalf. That was testified by Oliveras. That was testified by the Chapter 13 trustee. It was testified by the CAF representative, that's the Credit Advisory Foundation representative. And it's also in the law, Section 109 of Title 11, that it is the counselee that has to take the credit counseling. So there could be no lawful authority on the part of Valdez to use that name or information or to pass himself off as the person receiving the credit counseling. Does Your Honor have a question on that? So does the evidence support a conclusion that the defendant here was passing himself off? Yes, Your Honor, because at a minimum, he was telling the client the answer. So he is passing himself off as the person that is providing the answer to the question. The Credit Advisory Foundation thought that those answers that were provided to it in the quiz that was a necessary part of getting the counseling were given by the debtors. But in fact, those answers at a minimum or the information came from Valdez. So he is passing himself off as the person that is getting that credit counseling, as the person that is taking that quiz. The debtors didn't even see the questions. At the same time, he was purporting to take, or in fact taking as Valdez concedes, an action on his client's behalf that he couldn't. He was not authorized to take the credit counseling on his client's behalf. So before you sit down, can you address the scope of the restitution order with respect to the bankruptcy court? Yes, Your Honor. The government's argument in its brief was that Valdez hasn't established plain error by the fact that the court called it a restitution order when it could have simply fined him on that amount because he had the statutory power to impose a fine in that amount. He doesn't contest the amount or how it was calculated or the fact that the court had the authority to impose a fine, just the fact that the court called it a restitution. This is the district court? The district court, Your Honor. So where would the money go? So the district court could have imposed a fine payable to the bankruptcy court, to the trustee of the bankruptcy court under Section 110. So this money could still go to the bankruptcy court if imposed as a fine. It would not matter the fact that the court called it a restitution or a fine, if this court were to remand so the district court can clarify or simply amend the order so that it's a fine, the money could still go under 110 to the bankruptcy court. Section 110 allows the levying of a criminal fine in a criminal case separate from the bankruptcy proceeding? That is my reading of the statute, Your Honor. It specifically says a bankruptcy petition preparer who fails to comply with the provisions of this subsection may be fined, and then it says no more than 500 for each failure, and then it provides for treble fines and the like. It doesn't seem to limit itself to whether that has to be the bankruptcy court. It is the penalty for persons who negligently or fraudulently prepare bankruptcy petitions. Does it state that that's a crime? That's all right. I don't see that here in this particular section, Your Honor. It just says that it is payable to the United States trustee. Can you just address the issue of whether the bankruptcy court is the proper object for the restitution order? Yes, Your Honor. I think that the argument that this is making is premised on, in part, the constructive amendment theory and the variance theory and who the victims are. The indictment charged for the bankruptcy fraud, the victims as soon as collection efforts for the pension beneficiaries. But at sentencing, the court was entitled to make relevant conda findings as to who were additional victims from the defendant. So the debtors were additional victims. The bankruptcy court was an additional victim. And when the government at sentencing addressed the issue of the bankruptcy court, what it said was the bankruptcy court was entitled to make a victim impact statement because evidence established at trial and a minimum at sentencing showed that funders abused the bankruptcy court system and depleted its scarce resources. So they were a legitimate victim. What was the amount of the restitution? The amount of the restitution was $513,200. And was that calculated based on the total amount of the fraud? It was not. It has nothing to do with the part of the fraud in the government's case. It has to do, as the government included in its addendum, the way the bankruptcy court calculated it was they had 31 petitions that they identified and two additional and two separate orders. And they fined him $500 per petition. And then they fined him $500 per day that he didn't make the payment of that fine. So at the time of sentencing, it was calculated. Why would you use the fine measure as the amount for restitution? The truth is, Your Honor, nobody argued this at trial because Valdez didn't contest it. But if we were going to remand. Right, Your Honor. So in this case, because the bankruptcy court cases were closed and they had determined that Valdez owed that amount of $513,200, the court ordered it at restitution. And the inference would be to enforce collection of that payment because those cases were closed. And he wasn't facing any collection of that. And if this court remanded it and the district court imposes it as a fine, it would similarly be able to enforce collection of an amount that Valdez already owes the bankruptcy court. So it wouldn't change what he owes. It would just change. So just so I follow, the restitution amount is thought to be a substitute for the fine that was never imposed? The restitution amount, what the government was saying, could have been imposed as a fine by the court so that there wasn't any plain error in imposing payment of that amount. The court could have imposed restitution in a much higher amount because there's immeasurable. If there was a fine imposed, would the fine go to the bankruptcy court or not necessarily? Not necessarily because fines go to the court. Why would it be restitution to the bankruptcy court for that amount? We don't even know that the fine would have gone to the bankruptcy court. We don't know that. And if the court remands, the district court can certainly clarify. But what the government is saying is that the court could, under 110 and its reading of 110, have imposed a fine payable to the trustee of the bankruptcy court so that at the end of the day, there is no difference because Valdez would still owe that amount to the bankruptcy court. I thought the bankruptcy court already imposed a fine. They did, Your Honor, but Valdez never made the payment and those cases were subsequently closed. Right. He never made the payment, but right now there's an outstanding amount owed in the bankruptcy proceeding itself arising out of a contempt of court charge. And there is a separate restitution order in the same amount as was imposed by the bankruptcy court. So he, in essence, has two amounts that he owes, which in essence is for the same conduct. But only one of those, Your Honor, is currently an active amount because the bankruptcy court case is closed. If this court were to vacate the restitution, then arguably, I guess, the bankruptcy court could move to reopen those cases. But those cases were used in order to make that payment are now closed. So there isn't any attempt by the court or can there be to collect on that because those are closed cases. Well, isn't there a difference, though, between the case being closed and the debt still being owed, whether there's any enforcement proceedings or not? There is a difference, but the government's position is that in order to then collect on that debt that's still owed, the bankruptcy court would have to reopen those proceedings. And right now they aren't open, so he's not subject to double collection. It doesn't quite answer the question, but Judge Howell said a few minutes ago that's an answer. I seem to be doing that a lot this morning. Thank you, counsel. Thank you, Your Honors.